**Dickie Bruce WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–97–090–CR.**

Court of Appeals of Texas,
Waco.

June 10, 1998.

Jeanine Howard, Dallas, for appellant.

John C. Vance, Criminal District Attorney, Sue Korioth, Asst. District Attorney, Dallas, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## ORDER

PER CURIAM.

A jury convicted Dickie Bruce Wilson of aggravated sexual assault of a child. *See* Act of July 18, 1987, 70th Leg., 2d C.S., ch. 16, § 1, 1987 Tex. Gen. Laws 80, 80 (amended

1993) (current version at TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp. 1998)). Wilson pled true to two prior felony theft convictions alleged to enhance him to the level of an habitual offender. The court sentenced him to imprisonment for life.

Wilson's appellate counsel filed a motion to withdraw from representation of Wilson with a supporting *Anders* brief. *See Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). Wilson has filed a *pro se* response to the *Anders* brief. *See Wilson v. State,* 955 S.W.2d 693, 696–97 (Tex.App.—Waco 1997, order). The State has informed us by letter that it will not file a responsive brief. *Id.* at 697. We now address the potential sources of error identified by counsel and Wilson and conduct an independent review of the record seeking any arguable error which requires reversal. *Id.* at 698.

## FACTUAL BACKGROUND

The State accused Wilson of sexually assaulting his eleven-year-old step-daughter, M.W., on or about March 23, 1992. M.W. was born in April 1980. She testified that she could recall Wilson sexually assaulting her by sexual intercourse [1] as early as when she was nine years of age. M.W. told the jury of numerous occasions on which Wilson sexually assaulted her during the years he dated and ultimately married her mother. The evidence reflects that a doctor diagnosed M.W. to be twelve weeks pregnant on April 21, 1992. She recounted that during the months preceding this diagnosis, Wilson sexually assaulted her once or twice per week. Wilson abandoned M.W. and her mother in early April before the pregnancy diagnosis.

M.W.'s mother took her to a clinic where her pregnancy was terminated on May 2. Two years later, M.W. told her father about the sexual abuse and her pregnancy.[2] Her father told her stepmother, who took her to the police department to press charges.

---

1. M.W. recalled Wilson fondling her the first night they met, after her mother brought him home from a bar. She was six years old at the time.

2. M.W.'s mother never told her father about the sexual abuse or the pregnancy for fear he would seek to terminate or restrict her parental rights.

On the third day of trial, Wilson was admitted in a Dallas hospital with chest pains. He was discharged from the hospital several days later and instructed to seek follow-up care from his cardiologist in Oklahoma.[3] The court postponed his trial for one month and instructed his trial counsel to file any necessary motions which counsel deemed appropriate based on the physician's diagnosis.

On the date trial was scheduled to resume, Wilson remained in Oklahoma. Counsel presented information from Wilson's physician concerning his fitness for trial. Counsel also arranged a telephone conversation in which Wilson's physician and the court discussed Wilson's condition.

The court related that the physician informed the court in their telephone conversation that he was unaware until that conversation that Wilson was a defendant in a criminal trial. The doctor thought Wilson was merely a witness. The doctor informed the court that Wilson had a seventy percent blockage in his coronary artery. Without performing a stress test however, the doctor could not say with any certainty whether Wilson was fit for trial. The doctor also informed the court that he could have performed the stress test a week before Wilson's trial was scheduled to resume if he had known of the urgency of the matter.

The court concluded that Wilson failed to provide his physician with necessary information concerning his status as a criminal defendant. Thus, the physician did not sooner perform the stress test and could not say with certainty that appearing at trial would be detrimental to Wilson's condition. After considering the evidence, the court determined that Wilson's conduct demonstrated that he had voluntarily absented himself from the proceedings. See TEX.CODE CRIM. PROC. ANN. art. 33.03 (Vernon 1989). Accordingly, the court denied Wilson's motion for continuance and his motion for mistrial.

The trial proceeded in Wilson's absence. After hearing the evidence, the jury found Wilson guilty as charged. The court delayed sentencing until Wilson's apprehension four months later. The court sentenced Wilson as indicated above.

## POTENTIAL SOURCES OF ERROR

Wilson's counsel identifies four potential sources of error in her brief: (1) the court's denial of the motion for continuance presented after Wilson's hospitalization; (2) trial counsel's failure to object to the numerous extraneous sexual assaults shown by M.W.'s testimony; (3) the admission of testimony describing a message Wilson left on an answering machine even though the original recording had been lost or destroyed; and (4) the court's denial of Wilson's pretrial motion for continuance.

Wilson's *pro se* response asserts three "points of error" for our consideration: (1) "[i]neffective assistance of counsel in failing to follow through on the defensive theory of the defendant's medical proof that he did not impregnate the victim, in violation of the 6th and 14th [Amendments];" (2) ineffective assistance of counsel for the same reason in violation of article I, sections 10 and 19 of the Texas Constitution; and (3) the trial court erred by failing to require the State to elect the particular sexual assault for which he was being tried.

## FAILURE TO REQUIRE ELECTION

The State served Wilson prior to trial with a notice of intent to offer extraneous offenses. The notice states that Wilson "has sexually assaulted [M.W.] on numerous occasions between the ages of 5 years and 13 years of age, approximately on or about April 21, 1985 and April 1, 1992." The notice generally describes in the next three paragraphs various manners and means by which Wilson committed these extraneous offenses. The notice next sets forth more specifically:

> The Defendant made Complainant pregnant on or about February 1, 1992, causing her to have an abortion in April 1992.

These instances include but are not limited to the following dates: on or about

---

**3.** According to medical records offered in evidence, Wilson has a "strong positive family history of coronary artery disease." These records reflect that he had experienced a heart attack about three months before his trial.

April 21, 1985, Defendant contacted Complainant's vagina and breast with his hand and penetrated her vagina with his finger. On or about April 21, 1989 to May 21, 1991, Defendant caused Complainant to touch his penis with her hand, to put his penis in her mouth and put his fingers in her vagina.

On or about August 1, 1991, Defendant had Complainant watch him have sex with another person then penetrated her vagina with his penis.

On or about February 1, 1992, Defendant caused his penis to penetrate the vagina of the Complainant.

Before the State's opening statement, Wilson's trial counsel asked the court to require the State to elect the particular sexual assault for which he was being tried so that appropriate limiting instructions could be requested for the extraneous offenses. The State responded that it did not have to elect because:

- the indictment contains an "on or about" allegation;
- the victim cannot recall a specific date on which Wilson sexually assaulted her; and
- pursuant to article 38.37 of the Code of Criminal Procedure, "the entire relationship between the defendant and the victim is admissible prior to and subsequent to the specific offense that is on file." *See* Tex.Code Crim. Proc. Ann. art. 38.37 (Vernon Supp.1998).

Wilson's counsel responded that even article 38.37 imposes limitations on the admissibility of extraneous offenses and requested appropriate limiting instructions pursuant to the statute.

The court overruled Wilson's election request but informed counsel that it would place an extraneous offense instruction in the charge. Wilson's counsel indicated that he would object to each offer of an extraneous offense, however counsel apparently failed to object to any of the extraneous offenses offered. At the conclusion of trial, counsel declined the court's offer to include an extraneous offense instruction in the charge and posed no objections to the charge which was submitted to the jury without such an instruction.

■ Generally, when an indictment alleges a single act of intercourse and the evidence at trial shows more than one sexual act, "the State must elect the act upon which it would rely for conviction." *O'Neal v. State,* 746 S.W.2d 769, 771 (Tex.Crim.App. 1988). The court may in its discretion require the State to so elect at any time before resting its case-in-chief. *Id.* at 772. However, once the State rests, the court *must* require an election upon timely request by the defendant. *Id.*

■ It appears from *O'Neal* that the court's failure to require an election presents at least an arguable ground for reversal.[4] *See Wilson,* 955 S.W.2d at 698. Accordingly, we grant counsel's motion to withdraw but abate Wilson's appeal for appointment of new counsel. *Id.; Johnson v. State,* 885 S.W.2d 641, 648 (Tex.App.—Waco 1994, pet. ref'd). The court's order appointing new appellate counsel shall be filed with this Court within fifteen days of the date of this order. Counsel's brief is due within thirty days of appointment.

4. This should not be viewed as a determination that the court's failure to require an election constitutes reversible error. Nor should it be viewed as an implied conclusion that the remainder of the issues raised by Wilson and his counsel lack merit. Wilson's new appellate counsel should consider each of these issues and review the record to determine whether any other issues exist which should be raised in this appeal.